IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC - 7 2011

CLERK, U.S. DISTRICT COURT
by_____
          Deputy

EVELYN D. RICE,                    §
                                   §
              Plaintiff,           §
                                   §
VS.                                §   NO. 4:08-CV-354-A
                                   §
MICHAEL J. ASTRUE,                 §
COMMISSIONER OF SOCIAL             §
SECURITY,                          §
                                   §
              Defendant.           §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the petition of Ronald D.
Honig ("Honig"), the attorney for Evelyn D. Rice ("Rice"), the
plaintiff in the above-captioned action, to obtain approval of a
fee for representing Rice in this action (sometimes referred to
as "§ 406(b) petition").  After having considered such petition,
the response thereto of defendant, Michael J. Astrue,
Commissioner, Social Security Administration ("Commissioner"),
Honig's reply, and the other pertinent parts of the record, the
court has concluded that the request made by Honig's petition
should be denied.

I.

Background

This action was initiated by a complaint filed May 29, 2008, by Honig on behalf of Rice pursuant to the authority of 42 U.S.C. § 405(g), complaining of the decision of Commissioner denying the application of Rice for disability benefits under the Social Security Act, as amended.[1]   The case was referred to the United States Magistrate Judge for proposed findings and conclusions and recommendation.   The magistrate judge ordered that the case be treated as an appeal.

On October 24, 2008, Rice, acting through Honig, filed her brief with the magistrate judge, stating her reasons as to why the Commissioner's decision should be reversed.   Rather than file a responsive brief, Commissioner filed on January 16, 2009, a motion asking the court to remand the case to defendant pursuant to the fourth sentence of 42 U.S.C. § 405(g).

On February 18, 2009, the magistrate judge issued his proposed findings and conclusions and his recommendation that the case be remanded as requested by Commissioner's motion.   On March 13, 2009, the court signed an order accepting the magistrate

_____

[1]Honig had not represented Rice in the Social Security Administration proceedings that led to Commissioner's decision to deny her claim.  He first undertook representation of Rice on May 20, 2008, for the purpose of seeking district court review of Commissioner's adverse decision.

judge's proposed findings and conclusions and the recommendation of the magistrate judge. A final judgment reversing Commissioner's denial of benefits and remanding the case to Commissioner pursuant to the fourth sentence of § 405(g) was entered on March 17, 2009.

On April 16, 2009, Honig filed in this case a document titled "Petition and Brief for Award of Attorney Fees, Court Costs and Expenses Under the Equal Access to Justice Act" by which he requested payment to him under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), ("EAJA") of a fee of $2,853.87 for representing Rice in this court, plus court costs and expenses of $360.60. Honig's request was based on 16.95 hours of lawyer time (15.95 of which he alleged he devoted to prosecution of Rice's claim in this court and one hour devoted to preparation of his petition for a fee award) calculated at the rate of $168.37 per hour. On May 5, 2009, Commissioner responded to Honig's EAJA petition by stating that he had no objection to the requested $3,214.47 payment. By order signed May 13, 2009, the court granted Honig's petition, but provided in the order as follows:

> Recognizing that Honig may receive out of Rice's Social Security benefits attorney's fees at the administrative level, or in another judicial proceeding, pursuant to 42 U.S.C. § 406 and that the "purpose of EAJA is to reimburse the claimant for fees

3

> paid out of the claimant's benefits . . .," <u>Kopulos v.</u>
> <u>Barnhart</u>, 318 F. Supp. 2d 657, 666 (N.D. Ill. 2004),
> the court concludes that, in the event that Honig
> receives fee awards under § 406 for work performed on
> Rice's claim, regardless of whether such awards are
> awarded at the administrative or judicial level, Honig
> shall promptly pay to Rice an amount equal to this
> $2,853.87 fee award or the amount of the additional fee
> awards if less than $2,853.87.

May 13, 2009 Order at 2. Honig appealed to the United States

Court of Appeals for the Fifth Circuit from this court's ruling

that Honig pay the EAJA award to Rice in the event he were later

to succeed in recovering out of Rice's benefits attorney's fees

equal to or in excess of the EAJA award. The Fifth Circuit held

that the offset ruling in the order was beyond this court's

discretion, and reversed that ruling. <u>Rice v. Astrue</u>, 609 F.3d

831, 839 (5th Cir. 2010).

In the meanwhile, administrative proceedings on Rice's

disability claim recommenced. On April 8, 2010, Rice and Honig

were given notice by Commissioner that the new Administrative Law

Judge had made a decision fully favorable to Rice. On May 8,

2010, Rice and Honig were notified by Commissioner that Rice was

awarded past-due Social Security disability benefits of

$83,129.00, and that $20,782.13 of those benefits was withheld by

Commissioner for use in payment of fees to Honig if the

Commissioner was called upon to pay a fee.

4

In February 2011, Honig had Rice join him in a petition to the Social Security Administration to obtain approval for a fee of $10,000.00 for Honig's representation of Rice before the Social Security Administration, to be paid to Honig out of Rice's recently awarded past-due benefits. The itemization Honig submitted in support of his fee petition showed that Honig devoted 9.50 hours to the work he did at the administrative level.[2] On May 11, 2011, Commissioner authorized Honig to charge and collect a fee in the amount of $7,000.00 for services he provided to Rice for proceedings before the Social Security Administration. The $7,000.00 fee award, which amounts to $965.52 per hour, was paid by Commissioner to Honig out of the $20,782.13 Commissioner withheld from Rice's disability benefits.[3]

---

[2]The 9.50 hours shown on the itemization that forms the basis of the $7,000.00 award Commissioner made to Honig for work he did at the administrative level appears to include time for work that Honig also included in the itemization he submitted with his petition for an award of attorney's fees under the EAJA on April 16, 2009, and again in the itemization of work that he submitted with his petition now under consideration. Compare itemization attached to Petition to Obtain Approval of a Fee in Appendix filed November 1, 2011, with itemization of work done that is a part of the § 406(b) petition now under consideration, and the itemization of work that is a part of the petition and brief filed by Honig April 16, 2009, for recovery of attorney's fees under the EAJA.

[3]The $7,000.00 fee award represented a payment to Honig of $736.84 per hour for the 9.50 hours of work he represented in his administrative fee petition, and its attached itemization, he devoted to representation of Rice before the Social Security Administration. The record shows that 2.25 of those hours appear to have been improperly included by Honig in his administrative fee petition. Nov. 1, 2011 App., Itemization at 1. Using the reduced number of hours, the per-hour rate at which Honig was compensated for his administrative agency work was $965.52 ($7,000.00 ÷ 7.25 = $965.517). Id. at 1-4. Almost all of the 7.25 hours of work shown on Honig's administrative fee claim was represented by

(continued...)

By letter of June 18, 2011, Commissioner informed Rice and Honig that the $13,782.13 balance of the $20,782.13 withheld from her disability benefits was being paid to her.  When Honig discussed that matter with Rice on June 22, 2011, she told Honig that she already had put the money in her bank account, to which he responded that if the court approves an attorney fee, "she will have to pay it directly."  Pet'r's Resp. to Nov. 1, 2011, Order, Ex. 1, 3rd p.  Honig's currently pending § 406(b) petition was filed the next day.

II.

The Now Pending Petition of Honig,<br>Commissioner's Response Thereto, and Honig's Reply

On June 23, 2011, Honig filed the currently pending § 406(b) petition, titled "Petition to Obtain Approval of a Fee for Representing a Claimant Under the Social Security Act."  Honig seeks court approval of a $13,782.13 fee payment to him out of Rice's Social Security benefits for 15.95 hours of service he rendered to Rice in this action before the March 17, 2009, judgment of reversal and remand.  Those 15.95 hours are the same 15.95 hours included in the 16.95 hours of legal services for

---

[3](...continued)
telephone conversations or clerical-type work. Id. at 4.  Honig was not required to make any appearance on behalf of Rice at the administrative level, nor was he required to file any brief or memorandum on her behalf at that level.  One-half hour of the 7.25 hours was time Honig devoted to work in anticipation of his filing of the § 406(b) petition that is now under consideration.

which Honig was awarded a fee payment under the EAJA by the court's May 13, 2009 order.

Once the $7,000.00 fee award made by Commissioner to Honig out of Rice's benefits is deducted from the $20,782.13 of benefits withheld by Commissioner for payment of lawyer's fee, there was a balance of $13,782.13.  That is the amount Honig seeks by his petition to recover as attorney's fee for representing Rice in this court in the proceedings that are described in the first three paragraphs of the Background section of this memorandum opinion, *supra* at 2-3.  Honig's fee-payment request, if granted, would result in Honig receiving payment of a fee of $864.08 per hour for the 15.95 hours of his time he devoted to that work.[4]

Attached to Honig's § 406(b) petition is a copy of Honig's fee contract with Rice, which provides that, subject to court or agency approval, Honig is to receive a fee no greater than twenty-five percent of any past-due benefits award made to Rice following a judgment of remand.  Pet. filed June 23, 2011, Contingency Fee Contract, 1st p., para. 2.  The contract says

---

[4]If the court were to make a fee award of the kind now requested by Honig, he would be required to pay to Rice an amount equal to the $2,853.87 award made by the May 13, 2009 order granting Honig's request for a fee payment under the authority of the EAJA.  28 U.S.C. § 2412, Savings Provision, Pub. L. No. 99-80, § 3, 99 Stat. 183, 186 (1985) ("[W]here the claimant's attorney receives fees for the same work under both [§ 406(b) and the EAJA] . . . , the claimant's attorney refunds to the claimant the amount of the smaller fee.").

that, before receiving payment, "Honig shall be required to file and obtain express authorization for any fee payable under [paragraph 2 of the contract] in accordance with the applicable Federal statutory law and Code of Federal Regulations." Id. Presumably Honig's petition under consideration was intended to seek the contemplated "express authorization" for another fee for the 15.95 hours of work he did in this action before the judgment of remand.

Honig predicates his current fee-payment request on the language of 42 U.S.C. § 406(b)(1)(A), which reads in pertinent part as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may . . ., subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. . . .

42 U.S.C. § 406(b)(1)(A).

On July 15, 2011, Commissioner responded to Honig's June 23, 2011 petition, informing the court that Commissioner has no objection to Honig receiving a reasonable fee, but questioning the reasonableness of the amount of the fee sought by Honig.

Commissioner alleged that an hourly rate of $864.08 "may
reasonably be considered disproportionate to the actual services
rendered, and thus may represent a windfall for counsel." Resp.
at 3. Honig's reply basically was that he should receive the
balance of the past-due benefits withheld by Commissioner because
if he does not he would not receive twenty-five percent of past-
due benefits mentioned in his contract with Rice.[5]

III.

Analysis

Honig's § 406(b) petition raises three main issues that must
be resolved. First, there is the basic issue as to whether
§ 406(b) applies in a case such as this, where the court's March
17, 2009 judgment of reversal and remand did not award any past-
due benefits to Rice. Second, there is an issue as to whether
Honig's § 406(b) petition was timely filed. Third, there is the
issue as to whether the dollar amount requested by Honig in his

-------

[5]Honig stated in his reply that "the amount requested by Petitioner, $13,782.12 [sic], represents
the balance of the 25% of the past-due benefits withheld for payment of an attorney fee . . . ." Reply filed
July 18, 2011, at 5 (emphasis added). Honig failed to disclose in his § 406(b) petition or his reply that he
learned before he filed his petition that the $13,782.13 was not being held by Commissioner but, instead,
had been paid by Commissioner to Rice, who had deposited it in her bank account. Nor did
Commissioner in his response to the § 406(b) petition disclose that Commissioner no longer had
possession of the $13,782.13. Not until the court made pointed inquiry of Honig on the subject during a
telephone conference between the court and counsel on October 27, 2011, did the court learn that
Commissioner had paid the $13,782.13 balance to Rice. Only after Honig complied on November 14,
2011, to the order directing him to provide copies of all documents pertaining to Rice's claim or his
communications with Rice did the court learn that the payment of that balance to Rice occurred in mid-
June 2011, and that only one day before he filed his § 406(b) petition he discussed with Rice her receipt
of the balance, when she told him she had already put it in her bank account.

petition is reasonable.  Commissioner, by agreeing that Honig is
entitled a reasonable fee pursuant to his petition, seems to
align himself with Honig that § 406(b) is applicable.  As to the
timeliness issue, Commissioner again aligns himself with Honig by
making known in a response to a court order in this action that
Commissioner has a policy of not questioning timeliness of a
petition such as Honig's.  Mem. Br. filed by Comm'r Nov. 14,
2011, at 3rd unnumbered p.  Commissioner has raised the
reasonableness issue in his response to Honig's petition, but
presents very limited arguments in support of his opposition to
the reasonableness of Honig's fee request.

Because of the nature of Commissioner's response to Honig's
petition, the court <u>sua sponte</u> is considering the issues of
applicability of § 406(b) and timeliness, and has reviewed
aspects of the reasonableness issue that Commissioner has not
dealt with in his filings.  When confronted with a situation
similar to the one now facing the court, another district court
gave the following explanations that are highly apropos:

> [T]he Commissioner's failure to object to the award as
> untimely does not bind the court to rule accordingly.
> . . .  [W]hile the Commissioner may make fee
> recommendations, the task of determining whether a
> given fee is reasonable falls to courts.  Courts have
> been entrusted with this responsibility in recognition
> of the need for  the exercise of independent judgment
> in the award of fee applications. It is likewise
> appropriate for courts to be able to exercise their

10

judicial discretion to deny fee applications as
untimely even if the Commissioner fails to object on
that ground.

. . . By passing 406(b), Congress intended to
promote the access of social security claimants to
competent representation by making it easier for
attorneys to collect fees.  However, Congress in so
doing also sought to protect claimants from excessive
fees. Requiring attorneys to file under 406(b) in a
reasonably timely fashion serves these interests by
providing a flexible mechanism to enable attorneys to
file fee applications while seeking to ensure that
money rightfully due the plaintiff is not needlessly
withheld for an excessive amount of time.

Garland v. Astrue, 942 F. Supp. 2d 216, 222-23 (E.D.N.Y. 2007)

(citations omitted).

The ruling by the Garland court that the §406(b) application

should be denied in its entirety was made even though the Social

Security claimant from whose funds the fee award would be paid if

allowed had consented to the award.  The degree to which the

district court thought it had an obligation to protect the

interests of the claimant was explained by the court as follows:

That plaintiff consented to the instant award is
not sufficient to persuade the court to overlook Mr.
Binder's failure to promptly file his 406(b)
application. The need for careful scrutiny by the court
of 406(b) applications was articulately explained by
the Honorable H. Lee Sarokin, who, as a United States
District Judge, observed:

[T]he interests of the attorney and his or her
client are inherently in conflict in Social
Security cases. Of course, such conflict peaks at
the point at which the attorney requests a fee to
be deducted, dollar-for-dollar, from the award of

> back benefits to which the claimant is entitled.
> Moreover, having entered into a contingent fee
> arrangement for services culminating in a result
> in his or her favor, a claimant is unlikely to
> challenge the attorney's fee requested, as long as
> it is in accord with such agreement.

> Taylor v. Heckler, 608 F. Supp. 1255, 1258 (D.N.J.
> 1985) (internal citations and quotations omitted).
> Additionally, there is no reason to expect an
> individual unschooled in the law to recognize that it
> was his attorney who was responsible for unduly
> delaying the fee application.

Id. at 222.

As did the Garland court, this court considers appropriate sua sponte rulings on issues not raised by the parties. The court has concluded that Honig's petition should be denied because § 406(b) is not applicable and because, in any event, the petition was not timely. The court tentatively has concluded that the petition is subject to denial for the further reason that the fee request made by Honig is not reasonable in amount-- indeed, the court has reservations as to whether Honig should receive any further fee payment even if he could overcome the hurdles of inapplicability of § 406(b) and untimeliness. However, the court is not basing its denial on unreasonableness because the court would allow Honig to develop the record further before making a firm decision on that issue. The court discusses below the reasons why the court reached those conclusions.

A.    <u>Applicability of § 406(b)</u>

The operative language of § 406(b) provides that:

> <u>Whenever a court renders a judgment favorable to a
> [Social Security] claimant</u> who is represented by an
> attorney, the court may determine and allow <u>as part of
> its judgment</u> a reasonable fee for such representation,
> not in excess of 25 percent of the total of <u>the past-
> due benefits to which the claimant is entitled by
> reason of such judgment</u>.

42 U.S.C. § 406(b)(1)(A) (emphasis added).  A literal reading of

§ 406(b) leads to the conclusion that it simply is not applicable

here.  While the court rendered a judgment favorable to Rice by

reason of the March 2009 reversal and remand to Commissioner,

Rice is not entitled to any past-due benefits "by reason of that

judgment" under any fair reading of the statutory language.  <u>See</u>

<u>McGraw v. Barnhart</u>, 370 F. Supp. 2d 1141, 1156 (N.D. Okla. 2005)

(denying a motion for attorney's fees similar to Honig's petition

"based on the plain language of § 406(b)(1)"), <u>rev'd</u>, 450 F.3d

493 (10th Cir. 2006).[6]

---

[6]When reversing the district court's <u>McGraw</u> decision denying the request for recovery of
attorney's fees under § 406(b), the Tenth Circuit engaged in a strained reading and application of the
statute consistent with earlier holdings of the Fourth, Sixth, Eighth, and Eleventh Circuits.  <u>See</u> <u>McGraw</u>
<u>v. Barnhart</u>, 450 F.3d at 501-03.  The Tenth Circuit noted that Commissioner took the position after
§ 406(b) was enacted that fee awards were not available in court cases that resulted in remands for
further proceedings, <u>id.</u> at 500, but that "[f]inding that circuit courts were not particularly amenable to
that viewpoint, the agency eventually abandoned that position," <u>id.</u> (citation omitted).  The thought
occurs to the court that in abandoning that position across-the-board, Commissioner has failed to
recognize the part it plays resembling that of a trustee for the claimants.  <u>See</u> <u>Gisbrecht v. Barnhart</u>, 535
U.S. 789, 798 n.6 (2002).

This court had occasion in 2009 to render a decision on applicability of § 406(b) when ruling on a motion filed by a Social Security attorney under that statute.  Kellems v. Astrue, 611 F. Supp. 2d 639 (N.D. Tex. 2009).  In that opinion, the court expressed disagreement with circuit court decisions that ruled the statute applicable, and gave the reasons why, in this court's view, the plain text of § 406(b) compels denial of a § 406(b) petition such as Honig's.  Id. at 643-44.

The role Congress obviously had in mind for § 406(b) is that if a Social Security claimant were to succeed in a district court action, complaining of an adverse administrative ruling, by obtaining from the district court an award of past-due benefits, the district court would have the authority to award in the same judgment granting the past-due benefits a reasonable fee for representation of the claimant in the district court, to be certified by Commissioner for payment to the claimant's attorney out of the amount of the past-due benefits awarded by the judgment.  There is no other reading of the statute that respects its precise language.  It certainly does not make sense to say, as some of the courts have held, that the statute means that a district court that has entered a judgment of remand but has not entered a judgment awarding any past-due benefits to the claimant is authorized, nevertheless, to award by an order entered years

after entry of the judgment of remand the claimant's attorney a fee out of the claimant's disability benefits for representation provided to the claimant in the district court just because a post-judgment administrative award of benefits was made to the claimant.  Such an order would defy the statutory language.

If a Social Security claimant, through her attorney, is successful in a district court action in obtaining a reversal of an unfavorable administrative decision and a remand to the Commissioner for further proceedings, as Rice did in the instant case, the statutory scheme contemplates that the attorney can benefit from an EAJA fee award for the district court work he did and that, if he is successful on remand before the administrative agency, he can obtain a further fee, which could be as much as twenty-five percent of the awarded past-due benefits, depending on the decision of Commissioner in response to the attorney's fee petition directed to Commissioner.  Commissioner routinely withholds twenty-five percent from past-due disability awards to give the attorney an opportunity to seek the withheld amount. The statutory scheme was followed, and proved to be effective, to provide ample compensation to Honig in the instant case.  He received an EAJA fee award of $2,853.87 for his representation of Rice in the district court.  Then, when Rice recovered withheld benefits through the administrative process after the judgment of

this court remanded her case to Commissioner, Honig was generously awarded, at the rate of $965.52 per hour, supra at 5 n. 3, for the work he did for Rice at the administrative level. There is no valid reason for distorting the language of § 406(b) to enable the attorney to have yet another bite at the apple in the district court under these circumstances.

The Fifth Circuit has not rendered a decision on the issue under discussion. In Brown v. Sullivan, 917 F.2d 189, 191 n.3 (5th Cir. 1990), the Fifth Circuit declined to decide the issue, noting that it did not reach the question because neither of the parties raised the issue on appeal. See also Houston v. Sullivan, 917 F.2d 194, 195 n.2 (5th Cir. 1990). In Pierce v. Barnhart, 440 F.3d 657 (5th Cir. 2006), the Fifth Circuit focused, and ruled, on timeliness of a § 406(b) fee request, but explained that "[i]n so ruling, we express no opinion on the plaintiffs' entitlement to attorney's fees under § 406(b)," citing to the district court opinion in McGraw v. Barnhart that is referenced at page 13 of this memorandum opinion. Id. at 665. Similarly, in Jeter v. Astrue, 622 F.2d 371 (5th Cir. 2010), the Fifth Circuit, apparently because the issue was not presented to it for decision, did not decide whether § 406(b) is applicable in a case such as this, but merely assumed that it was. The Fifth Circuit noted in Jeter that: "No party disputes that [the

16

claimant's attorney] is entitled to some fee for his success in representing [the claimant].  The question is merely <u>how much</u> and whether the district court erred when it failed to award the actual contingency fee award."  <u>Id.</u> at 375.  In other words, <u>Jeter</u> is an example of a case in which Commissioner capitulated in favor of the claimant's attorney on the issue of applicability of § 406(b), with the result that the Fifth Circuit had no occasion to make a ruling on the issue.

In <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789 (2002), an opinion in which the Supreme Court discussed factors that should be considered in determining the amount of a § 406(b) fee award, the Court assumed applicability of the statute to the fact situations presented to it.  Moreover, the language of the opinion suggests that the awards to the Social Security claimants were made by district court judgments, and that, following entry of those judgments, the attorneys representing the claimants obtained on behalf of their clients attorneys' fees pursuant to the EAJA, and sought for themselves fees under the authority of § 406(b).  <u>Id.</u> at 797.  Apparently, the Supreme Court has never addressed the issue of applicability of § 406(b) in a case where the district court judgment has not included a disability benefit award.

17

For the reasons discussed above, the court concludes that § 406(b) simply is not applicable to a fee claim such as Honig now makes.

B. **The Timeliness Issue**

1. **Honig's Petition Was Not Timely**

In its <u>McGraw</u> opinion, the Tenth Circuit defined the timeliness issue as follows:

> Section 406(b) itself does not contain a time limit for fee requests. Federal Rule of Civil Procedure 54(d)(2)(B), on the other hand, requires that fee motions be filed "no later than 14 days after entry of judgment." But a sentence-four remand requires entry of judgment at the time of the remand, and an SSA fee award will only rarely be calculable before the end of that fourteen-day period. How, then, can counsel seek, and the district court order in appropriate cases, a § 406(b)(1) fee award in compliance with the Federal Rules of Civil Procedure?

450 F.3d at 504 (citations omitted).

In <u>Pierce v. Barnhart</u>, the Fifth Circuit ruled that the time period contemplated by Rule 54(d)(2) controls, and that, therefore, a § 406(b) request for attorney's fees should be filed no later than fourteen days after the entry of judgment unless otherwise provided by statute or court order.[7] 440 F.3d at 663. The Fifth Circuit held in <u>Pierce</u> that the § 4.06(b) motion for

---

[7]In Pierce v . Barnhart, the Fifth Circuit mentioned that a district court local rule also required the filing of a motion for attorney's fees no later than fourteen days after entry of judgment. 440 F.3d 657, 662-63 (5th Cir. 2006). However, the court does not consider that the ruling of the Fifth Circuit on any point relevant to the instant action would have been different if such a local rule had not existed.

attorney's fees was timely under Rule 54(d)(2) because of a
ruling the district court made in response to the initial
application for attorney's fees under § 406(b) denying the
application "without prejudice at this time, subject to being
refiled should Plaintiff[s] prevail on the merits of [their]
claims." Id. at 664.  The Fifth Circuit explained, "[i]n so
ordering, the district court gave the plaintiffs the opportunity
to file their § 406(b) applications at a later date, even if
their filings fell outside of the fourteen-day time period
prescribed by Rule 54(d) . . . ." Id.  In the instant action,
this court has not signed an order or made any ruling that could
be interpreted as an extension of the fourteen-day deadline.

Because neither party had addressed the timeliness issue in
the initial filings relative to Honig's request for attorney's
fees under § 406(b), the court by order signed October 28, 2011,
directed that by November 14, 2011, Honig and counsel for
Commissioner "each file a memorandum in this case giving his and
his client's views on the timeliness issue, and providing the

available arguments and authorities in support of such views."[8]

Oct. 28, 2011 Order at 7.

Honig failed to comply with the directive of the October 28, 2011 order. He has not filed anything expressing his or his client's views on the timeliness issue.[9]

Commissioner, acting through Dobbs, responded to the directive of the October 28, 2011 order by the filing on November 14, 2011, of a memorandum brief calling the court's attention to five decisions of other district courts in the Fifth Circuit that, according to Commissioner, "have consistently concluded that barring an attorney's § 406(b) filing merely because it was

---

[8]By way of explanation for the request for additional briefing on the timeliness issue, the court gave the following explanation in the October 28, 2011 order:

> The Fifth Circuit seems to have ruled that the time period contemplated by Rule 54(d)(2) controls—the motion must be filed no later than fourteen days after the entry of judgment. Pierce v. Barnhart, 440 F.3d 657, 663 (5th Cir. 2006). Obviously, Honig's petition for approval of a fee, which was filed June 23, 2011, over two years after entry of the final judgment in this action, was not timely in a Rule 54(d)(2) sense. The court also notes that Honig's petition might well be viewed as untimely for the further reason that it was not filed until after, according to the information provided by Honig during the telephone conference/hearing, Commissioner had paid to Rice the $13,782.13 balance Commissioner had withheld in the event it was required to make a payment of attorney's fees to Honig out of the past-due Social Security benefits recovered by Rice. The court notes that § 406(b) seems to contemplate that if a fee award is made pursuant to that section it is to be made while the funds are being held by Commissioner—before disbursement of all past-due benefits have been made to the Social Security claimant—saying that "the Commissioner of Social Security may . . . certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits." 42 U.S.C. § 406(b)(1)(A).

Oct. 28, 2011 Order at 6-7.

[9]Honig filed items on November 14, 2011, with a cover sheet entitled "Petitioner's Response to Order of Court," but did not include in those items any mention of the timeliness issue.

Case 4:08-cv-00354-A Document 48 Filed 12/07/11 Page 21 of 36 PageID 394

made after the 14-day limit would not be not [sic] appropriate."
Mem. Br. at 1-2.[10] While the rulings in those cases were not
altogether consistent, they collectively say that when evaluating
timeliness of a § 406(b) motion the court has a degree of
discretion to extend the fourteen-day time period contemplated by
Rule 54(d)(2). The suggestion is made in one or more of the
cases that the court appropriately could consider that the
fourteen-day period starts to run when the Social Security
claimant and her attorney are given notice by the Social Security
Administration that the claimant has been successful in his or
her application for Social Security disability benefits following
reversal of the initial adverse decision and remand.[11]

Three other decisions of interest Commissioner cited in his
memorandum brief are Brown v. Commissioner, No. 05-1336, 2008 WL
2705457 (W.D. La. July 10, 2008), Taharah v. Astrue, No. 4:06-
3801, 2011 WL 1882821 (S.D. Tex. May 16, 2011), and Foster v.
Astrue, No. H-09-173, 2011 WL 4479087 (S.D. Tex. Sept. 26, 2011).

---

[10] Four of the five decisions were out of the Western District of Louisiana, and the fifth was out
of the Southern District of Texas. Stoneking v. Commissioner, No. 09-CV-1020, 2011 WL 3328538, at
*1 (W.D. La. July 13, 2011); Gilliam v. Astrue, No. 07-0726, 2010 WL 3809831, at *1 n.3 (W.D. La.
Sept. 22, 2010); Daigle v. Social Security Administration, No. 06-2393, 2010 WL 3522389, at *3 (W.D.
La. Aug. 31, 2010); Wilcox v. Astrue, No. 3:07-0365, 2010 WL 3075264, at *1 (S.D. Tex. Aug. 5, 2010);
Jeter v. Commissioner, No. 2:06-CV-81, 2009 WL 909257, at *4 (W.D. La. Apr. 3, 2009).

[11] The Third Circuit in Walker v. Astrue firmly established in that circuit the rule that "[c]ounsel
will have fourteen days from notification of the notice of award to file a [§406(b)] fee petition in the
district court." 593 F.3d 274, 280 (3rd Cir. 2010).

21

In Brown, the court adopted the approach that the fourteen-day clock of Rule 54(d) would be tolled until the Commissioner issues a notice of award, informing the claimant and the attorney of the award of past-due benefits, and held that the filing of a motion under § 406(b) almost five months after issuance of the notice of award was "clearly untimely." 2008 WL 2705457, at *1. In Taharah, the court recognized that "in some circumstances, a motion for attorney's fees is timely when filed after the Commissioner, upon remand, grants benefits to the plaintiff." 2011 WL 1882821, at *1. But, the court held that the motion in that case was untimely because it was filed more than one year after the Commissioner's grant of benefits. Id. In Foster, the court, apparently having been influenced by the failure of Commissioner to argue that the motion was untimely, found that the motion filed four months after the favorable decision was issued by the Commissioner was timely. 2011 WL 4479087, at *2.

None of the cases cited by Commissioner persuade the court that Honig's § 406(b) petition was timely. If the fourteen days were to start running after "the entry of judgment" (to use the precise language contained in Rule 54(d)(2)(B)(ii)) on March 17, 2009, Honig's June 23, 2011 request was filed more than two years too late. Giving Honig the benefit of the indication in some of the court decisions that the running of the fourteen-day time

period should start on the date when the Social Security
Administration issued its notice of favorable award on May 8,
2010, Honig's request was over one year too late.  Honig has not
sought any relief from the fourteen-day deadline, nor can the
court think of any basis for granting him any.

    Another factor to be considered on the timeliness issue is
the language of § 406(b)(1)(A) that if a court determines and
allows as part of its judgment a reasonable fee for
representation of the claimant before the court, "the
Commissioner of Social Security may . . . certify the amount of
such fee for payment to such attorney out of . . . the amount of
such past-due benefits."  42 U.S.C. § 406(b)(1)(A).  Honig's
§ 406(b) request was not made until after all past-due benefits
(minus the $7,000.00 paid to Honig) had been paid by Commissioner
to Rice.  The plain text of the statute makes clear that the
statute contemplates that such an award by a district court
should not be made unless Commissioner is in a position to
certify payment of the amount of the fee out of past-due benefits
that are being held by Commissioner.

    Summed up, the petition Honig filed June 23, 2011, was not
timely, and it should be denied for that reason.

2. Further Discussion of Why the Court Raised
   the Timeliness Issue Sua Sponte

Commissioner explained in his November 14, 2011 memorandum

brief why he failed to urge untimeliness as a reason for denial

of Honig's request for attorney's fees:

> As a matter of policy, the Commissioner will not
> raise an issue of untimely filing regarding an
> attorney's § 406(b) fee motion unless a significant
> number of months have passed between the claimant's
> award of benefits and the attorney's filing of the
> § 406(b) motion. The basis for this policy is to
> encourage attorneys to promptly file for § 406(b) fees
> so that the balance of withheld past-due benefits may
> be promptly disbursed to the claimant, rather than
> being delayed by extended post-award proceedings.

Mem. Br. filed Nov. 14, 2011, at 3.

The court finds Commissioner's explanation puzzling. Even

if there is such a policy, "a significant number of months [has]

passed between the claimant's award of benefits and the

attorney's filing of the § 406(b) motion." Thus, an assertion of

untimeliness on behalf of Rice would not have violated the

policy. Moreover, there is no logic as to why Commissioner would

not assert untimeliness in this action inasmuch as such an

assertion would not delay disbursement of the balance to Rice.

The balance had been disbursed to her before Honig filed his

§ 406(b) fee request.

The notion that as a matter of policy Commissioner will not

raise an issue of untimeliness suggests that Commissioner does

not consider that he has any obligation to a Social Security
claimant in cases such as this other than to make known his
belief that the amount of the fee award sought by the claimant's
attorney is excessive, if the Commissioner has such a belief.
This narrow view seems to represent a failure on the part of
Commissioner to fully appreciate his role resembling that of a
trustee for a claimant when a § 406(b) request for attorney's
fees has been made by the claimant's attorney. See Gisbrecht,
535 U.S. at 798 n.6.

The concern that Commissioner would not give appropriate
attention to the interests of Rice in this matter led to a
discussion between the court and counsel on that subject during a
telephone conference/hearing conducted on October 27, 2011, with
Honig and Dobbs participating. That concern caused the court to
include in its October 28, 2011 order a directive that by
November 14, 2011, Honig and Dobbs "each file a document in
[this] action making known his and his client's views as to
whether Rice should have a role in the decision of whether to
approve Honig's petition asking that $13,782.13 of her funds be
paid to [Honig] and, if so, what procedural steps might be taken

to cause Rice to have a meaningful opportunity to participate in this proceeding."[12]   Oct. 28, 2011 Order at 5.

Honig disregarded the court's order that he file a document on such subject by November 14, 2011, by failing to provide any response to that directive of the October 28 order.  The government included a section titled "Involvement of Rice in the fee process" in its November 14, 2011 memorandum brief in which Commissioner said that he had no objection to the court considering Rice's position in its independent assessment of the reasonableness of the requested § 406(b) attorney fee.  The government made no mention of anyone giving consideration to Rice's interests as to other issues, such as the timeliness issue.

While the court is uncertain of the best answer to the question as to the technique or techniques to be followed in

_____

[12]By way of explanation for that directive, the court said in the October 28, 2011 order that:
    Another subject discussed during such telephone conference/hearing was whether Rice should be given an opportunity to make known her views in this action concerning Honig's petition seeking payment to him of $13,782.13 of past-due Social Security benefits she was awarded, and apparently has been paid.  Obviously Honig has a conflict of interest that would prevent him from providing representation to Rice in the matter of whether he should receive such a payment.  There was a suggestion that perhaps Commissioner could be viewed to be the representative of Rice on the issue of whether such a payment should be made.  However, the court has a concern that Commissioner's interests are such that he might not be willing to take positions that an attorney representing Rice could reasonably take in opposition to Honig's request for payment.  The court requested the parties to give thought to the subject, and be prepared to make recommendations to the court.
Oct. 28, 2011 Order at 4-5.

assuring that a Social Security claimant has proper
representation, the court is satisfied that, for the reasons
expressed in Garland, supra at 10-12, it has the power, if not
the obligation, to give Rice the benefit of any defense to
Honig's fee request that could, and undoubtedly would, be
asserted on her behalf if she had competent legal representation
in this proceeding.

C.   The Reasonableness Issue

After having considered the factors mentioned by the Supreme
Court in Gisbrecht and the Fifth Circuit in Jeter as proper for
consideration in ruling on a § 406(b) motion when there is a
contingency fee contract, and having noted that in Pierce the
Fifth Circuit said that "[a]n award of attorney's fees out of
past-due benefits is discretionary," Pierce v. Barnhart, 440 F.3d
at 663, the court tentatively has determined that payment of a
further fee to Honig by Rice out of Rice's disability benefits
award would not yield a reasonable result in this case.  To
determine what factors the court may consider in deciding a fee
request such as Honig's, the court begins with principles
expressed by the Supreme Court in Gisbrecht, that:

> § 406(b) does not displace contingent-fee agreements as
> the primary means by which fees are set for
> successfully representing Social Security benefits
> claimants in court.  Rather, § 406(b) calls for court
> review of such arrangements as an independent check, to

> assure that they yield reasonable results in particular
> cases. . . . Within the 25 percent boundary, . . . the
> attorney for the successful claimant must show that the
> fee sought is reasonable for the services rendered.

535 U.S. at 807.

The court mentions in passing that because of the conditional nature of the contingency fee contract between Honig and Rice as it pertains to a fee on a disability benefits award made at the administrative level after a district court remand, the dignity given to contingency fee contracts in <u>Gisbrecht</u> and <u>Jeter</u> would not seem to be deserved by the applicable contingency fee paragraph in the Rice-Honig contract.[13]   Nevertheless, under this subheading the court is proceeding on the assumption that the principles announced in <u>Gisbrecht</u> and <u>Jeter</u> are applicable here.

Factors the court may consider in determining reasonableness of a § 406(b) fee request include the "risk of loss in the representation, experience of the attorney, percentage of the past-due benefits the fee constitutes, value of the case to a

---

[13]The pertinent part of the fee contract reads as follows:
>    If a favorable decision is issued in my claim(s) by the Appeals Council or by a Federal Court, or following an order of remand issued by the Social Security Administration or a Federal Court, the fee will be 25% of the past-due benefits payable to the Claimant and any beneficiaries entitled to benefits under Claimant's account.  <u>In such circumstance, Attorney Ronald D. Honig shall be required to file and obtain express authorization for any fee payable under this paragraph in accordance with the applicable statutory law and Code of Federal Regulations.</u>

Pet. filed June 23, 2011, Contingency Fee Contract, 1st p., ¶ 2 (emphasis added).

claimant, degree of difficulty, and whether the client consents
to the requested fee." Jeter, 622 F.3d at 382.  Other factors
can be considered as well in particular cases because, after all,
there is no "exhaustive list of the precise factors lower courts
must consider," and district courts are well-positioned to
determine the relevant factors in assessing the attributions of a
claimant's success.  Id. at 381.  After considering the factors
relevant to Honig's request, the appearance is not only that
Honig's fee request is excessive but that Honig has already been
sufficiently compensated for the work he has done, and he
deserves no more from Rice.

Accepting at face value the recitations made in Honig's
affidavit that is attached to his June 23, 2011, § 406(b)
petition, Honig is a highly experienced Social Security
practitioner.  Rice received significant benefits from the
reversal and remand that resulted from the filing by Honig of
this action challenging Commissioner's initial decision adverse
to Rice.  Those factors favor Honig.  All the other factors
mentioned below go against Honig's fee request.

Honig recognized from the onset that his risk was minimal.
He discovered during his very first communication with Rice the
key issue that resulted in the March 17, 2009, judgment of
reversal and remand.  As part of Honig's notes of his first

29

communication with Rice on May 20, 2008, he put in bold-face type
that:

> HERE'S THE SMOKING GUN-ALL OF THE JOBS USED BY ALJ ARE
> SEMI-SKILLED; HASN'T ESTABLISHED THAT SHE HAS SKILLS OR
> THAT SKILLS WERE TRANSFERABLE TO OTHER JOBS.

Pet.'s Resp. to Nov. 1, 2011 Order, Ex. 1.  Thus, from the very
beginning Honig knew that the case was subject to reversal and
remand due to the ALJ's failure to find that Rice had skills that
were transferable to other jobs.  Subsequently, Honig's
nonclerical-type work on behalf of Rice before the district court
was limited to the following:  He filed a boilerplate-type
complaint on May 29, 2008; once the case was treated as an
appeal, Honig filed Rice's brief with the magistrate judge; and,
when Commissioner filed its motion to remand, giving as the
ground of the motion the "smoking gun" Honig discovered at the
outset, Honig objected, arguing that specific directions be given
in the motion to remand.

Commissioner's motion to remand explained that: "[T]he [ALJ]
found Rice not disabled based on the ability to perform semi-
skilled work.  However, a claimant cannot be found capable of
performing semi-skilled work in the absence of a finding of
transferable skills, which was not done in this case."  Comm'r's
Mot. & Br. to Remand at 1 (record reference omitted).  This is

exactly the outcome Honig anticipated within the first 1.75 hours of his introduction to Rice and her claim.[14]

Identification and presentation of the decisive issue would not present a significant degree of difficulty for an experienced Social Security practitioner.  Social Security Ruling 82-41 (titled "Work Skills and Their Transferability as Intended by the Expanded Vocational Factors Regulations Effective February 26, 1979") appears to provide clear guidance for any experienced practitioner to recognize the inadequacy of the ALJ's analysis and resulting decision adverse to Rice.

Honig says in his reply to Commissioner's response that "if [he] had not agreed to assume the burden and represent Ms. Rice before the District Court, she would have had nothing."  Reply

---

[14]In an entry showing that Honig devoted 1.75 hours of his time to the work, Honig described his initial contact with Rice on May 20, 2008, as follows:

05/20/08

Telephone conference with claimant; discussed social security claim and possible representation; discussed evidence presented to ALJ, ALJ's findings and brief of former attorney; researched Dictionary of Occupational Titles to determine whether vocational expert's testimony comports therewith; determined that all of the jobs identified by the vocational expert witness are semi-skilled and that the ALJ has not established that the claimant has skills or that skills are transferable to other jobs; discussed Appeals Council action in response to Request for Review; explained to claimant grounds for appeal in U.S. District Court; explained terms of representation; claimant agreed to representation; forwarded representational materials to claimant.                    1.75

App. to Pet. filed 11/1/2011, 4th p. (emphasis added).  The court notes that the itemization language for work done on May 20, 2008, as shown in Honig's November 1, 2011, appendix differs from the language for the same work done May 20, 2008, shown on the Itemization attached to Honig's petition under consideration, and shows a different amount of time devoted to the work--1.75 hours shown on the itemization in the November 1, 2011, appendix and 1.50 hours shown in the Itemization attached to the petition.  Similar discrepancies exist in other May 2008 entries on the two itemizations.

filed July 18, 2011, at 6. The court is not persuaded by that
comment because the court has no reason to think that Rice would
not have been able to find a competent attorney to contest in
district court the adverse ruling against her if Honig had
declined the representation or if he had never been considered.
Only a few months ago, the court received a letter from a law
firm in Dallas, Texas, soliciting district court representation
of Social Security claimants who suffer an adverse decision
before the Commissioner, advising that the compensation they
would expect would be no more than the EAJA fee. The attorneys
explained in their letter:

> . . . We have represented the disabled across the
> nation in almost every state. We promise to make your
> clients and friends completely satisfied and enhance
> your Firm's reputation in the process.
>
> Also, if your firm already has a disability
> practice, we want your Federal Court work. We always
> return the client to you after we win so you can go to
> the remand hearing and get the fee. <u>We only take the
> EAJA fee</u>.

Sept. 9, 2011 Letter to Ct. from Mitzner Law, Dallas, Texas
(emphasis added).[15] The court has reason to think that, if Honig
had not undertaken Rice's district court representation, there is
an abundance of competent Social Security practitioners who would

---

[15]So that the parties will be aware of the full text of the Mitzner Law letter, the court is signing a
separate order on the date of the signing of this memorandum opinion and order that has a copy of the
letter attached as an exhibit.

have been willing and eager to do so and that at least some of them would have been willing to provide to her district court representation comparable to that provided by Honig with no expectation of an fee other than what the attorney might recover under the EAJA.

Another factor against Honig is the circumstance that, because of the untimeliness of Honig's § 406(b) petition, Commissioner has paid the withheld benefits, reduced by the $7,000 fee payment made to Honig, to Rice. Commissioner has informed the court that Commissioner has established an administrative procedure through which, when Commissioner has disbursed the remaining withheld past-due benefits to a claimant, a claimant's attorney, such as Honig, may request that the attorney's fees he is owed by his client be withheld from the client's future disability benefit payments. Mem. Br. to Ct. Order of Oct. 28, 2011, at 5th unnumbered p. The court's attention was drawn by Commissioner to a section of Commissioner's Program Operations Manual System describing a rather complicated procedure for retrieval from a Social Security claimant of disability benefits for payment to her attorney when withheld benefits have been turned by Commissioner over to the claimant. The court is inclined to think that Rice should not be subjected to further procedures, administrative or otherwise, in

an attempt to require her to pay out of her pocket a further fee
to Honig.

Honig, who under the _Gisbrecht_ principles has the burden of
proof on the reasonableness issue, has provided nothing to the
court that would suggest that Rice has consented to his § 406(b)
petition.  Indeed, there is nothing in the material provided by
Honig to indicate that Honig has made Rice aware that he filed a
petition asking for further fees out of her benefits.  The court
thinks the appropriate inferences to be drawn are that Rice not
only has not consented, but has not been made aware that Honig is
asking the court to require her to pay to him out of her pocket a
further fee of $13,782.13.

Also pertinent is the fact that Rice did not sign an
unqualified contingent fee agreement as to benefits recovered by
her after remand, but signed a contract that obligated her to pay
the contingent fee only if Honig were to "file and obtain express
authorization for any fee payable under [paragraph 2] in
accordance with the applicable Federal statutory law and Code of
Federal Regulations."  Pet. filed June 23, 2011, Contingency Fee
Contract, 1st p., para. 2.  Put another way, Rice and Honig
contracted that the maximum fee she would be obligated to pay for
representation Honig provided to her after remand would be
twenty-five percent, but that she would not be obligated to pay

him any fee unless Honig first filed, and obtained express authorization, for the fee payment--in yet other words, Honig contracted with Rice that she would not be obligated to make any fee payment unless the court or Commissioner, as the case may be, found that the fee payment was reasonable and appropriate.   In the instant case, the court is inclined to think that Honig has not, and cannot, establish the reasonableness of the fee request he is now making.

*     *     *     *     *

The record made thus far indicates that, under the circumstances of this case, an order requiring Rice to pay out of her personal funds, or to give up future benefits, so that Honig can recover more for his representation of her[16] would not be a reasonable result.   However, the court is not denying Honig's § 406(b) petition for lack of proof of reasonableness because the court would allow Honig, if he wished, to further develop the record if the outcome of Honig's motion were to turn on the reasonableness issue.

---

[16]When the total fee payments Honig already has received for the representation of Rice, $9,853.87, are divided by what appear to be the total number of hours he devoted to her representation, 23.2, he already has been paid a fee at the rate of $424.74 per hour for his work.  This exceeds what he represents to be his usual hourly rate for Social Security work of $350.00.  Pet. filed June 23, 2011, Honig Aff. at 11.

D.    Conclusion

The court is denying Honig's § 406(b) petition for the reason that § 406(b) does not authorize a fee award under the circumstances of this case and for the further reason that, in any event, Honig's § 406(b) fee request is untimely.

IV.

Order

Therefore,

The court ORDERS that the relief sought by Honig in his Petition to Obtain Approval of a Fee for Representing a Claimant Under the Social Security Act, filed June 23, 2011, be, and is hereby, denied.

SIGNED December 7, 2011.

JOHN McBRYDE
United States District Judge

36